# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**AMBER THOMAS,**

      **Plaintiff,**

    v.

**RONI BURKES,** *et al.*,

      **Defendants.**

Civil Action 2:17-cv-475
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion to Dismiss (ECF No. 12.), Plaintiff's Response in Opposition (ECF No. 23), and Defendant's Reply (ECF No. 24). For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

Plaintiff, a prison inmate under the custody and control of the Ohio Department of Rehabilitation and Correction ("ODRC"), brings her claims pursuant to 42 U.S.C. § 1983 alleging that Defendants failed to provide her with adequate medical care. (Doc. No 1 at 2.) Plaintiff also posits various state-law tort claims. (*Id*. at 14-16.) Plaintiff sues Defendants in both their individual and official capacities. (*Id*.)

In her Complaint, Plaintiff states that on January 2, 2012, she noticed a lump behind her right ear and requested an examination in the prison's medical unit. (*Id*. at 4-5.) According to Plaintiff, unnamed defendants examined her and treated her for an ear infection. (*Id*. at 5.) Plaintiff states that she received care from unnamed defendants "several times in 2012," which

included examination and treatment of the lump as if it were an ear infection. (*Id*.) Plaintiff claims that the lump continued to expand during this time. (*Id*.)

Plaintiff claims that throughout 2012 and 2013, unnamed defendants referred her to see the prison dentist, who referred her back to the medical unit, and an ear, nose, and throat ("ENT") clinic at Franklin Medical Center ("FMC"), an ODRC facility. (*Id*.) Plaintiff claims she received no treatment for her condition from either the ENT or at FMC. (*Id*.) Plaintiff claims that on January 5, 2014, the prison dentist referred her to the Ohio State University dental clinic, where a surgeon diagnosed the lump as a partial parotid gland duct blockage and recommended treatment by an ENT. (*Id*. at 5-6.) According to Plaintiff, she saw the prison dentist again on July 28, 2014, and the dentist noted swelling around Plaintiff's right ear and TMJ area. (*Id*. at 6.) Plaintiff states that the dentist referred Plaintiff to an ENT specialist "ASAP." (*Id*.) Plaintiff also states that in July or August 2014, the ODRC Bureau of Medical Services or the Collegial Review Committee denied the referral and sent Plaintiff back to the prison medical unit. (*Id*.) Plaintiff further states that, at the medical unit, she continued to receive treatment for an ear infection with referrals back and forth to the dentist. (*Id*.)

According to Plaintiff's Complaint, on December 31, 2014, the dentist issued another referral to the ENT. (*Id*.) Plaintiff states that on January 13, 2015, John/Jane Doe Defendants 1-5 referred her to the ENT, who developed a treatment plan including a CT scan, biopsy, and follow-up care. (*Id*. at 7.) Plaintiff also states that she received the CT scan in February 2015 and underwent the biopsy procedure in May 2015. (*Id*.) Plaintiff further states, "These tests revealed plaintiff had a swollen right parotid gland and that her right salivary gland had a

pleomorphic adenoma, which was benign then, yet, had the potential to become malignant."
(*Id*.)

Plaintiff's Complaint states that in April 2015 she noticed decreased hearing in her right ear and informed the medical staff. (*Id*.) Plaintiff states that she underwent surgery to remove the tumor on June 5, 2015, and sustained nerve damage to the right side of her face due to the size of the mass. (*Id*.) Plaintiff states that on June 17, 2015, Plaintiff reported problems with her right eye and pain in her right ear. (*Id*. at 8) Plaintiff also states that on June 18, 2015, Defendant Ajibade saw her and prescribed "eye drops and told her to use them in her ear." (*Id*.) According to Plaintiff, Defendant Ajibade also gave her pain medication. (*Id*.) Plaintiff further states that on June 20, 2015, her jaw and neck were swollen and she had continuing pain in her right ear. (*Id*.) Plaintiff states that she participated in a teleconference with a physician, who instructed Plaintiff to discontinue the eye drops and prescribed pain medication and antibiotics. (*Id*.)

Plaintiff's Complaint states that she saw the ENT on July 1, 2015, for a follow-up appointment. (*Id*.) Plaintiff claims that her "right eye sustained permanent injury from delay in treating the mass; her eyelid does not close fully, she must use eye drops constantly throughout the day, use an eye lubricant at night, she now must wear eyeglasses and her eyes are light sensitive." (*Id*.) Plaintiff claims she told Defendant Burkes about these problems on July 7, 2015, and that she had initial difficulty in obtaining a necessary eye lubricant that was eventually furnished to her. (*Id*. at 9.) Plaintiff states that she submitted several requests to Defendant Burkes asking for medical help throughout the time period at issue in this matter. (*Id*.) Plaintiff left ODRC custody on December 14, 2015. (*Id*.)

According to Plaintiff, "defendants delayed and/or failed to provide requested and needed medical care and treatment . . . which demonstrates . . . deliberate indifference to plaintiff's serious medical needs." (*Id*. at 10.) Plaintiff seeks compensatory damages in excess of $75,000 against each Defendant, attorney fees, and $500,000 against ODRC in punitive damages, and other relief as the Court deems appropriate. (*Id*. at 16.)

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

### III. Analysis

Plaintiff brings her claims against Defendants under 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

In order to proceed under § 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir. 1983), *rev'd and remanded sub nom*, *Brandon v. Holt*, 469 U.S. 464 (1985). As a general rule, a plaintiff proceeding under § 1983 must allege that the deprivation of her rights was intentional or at least the result of gross negligence. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Mere negligence is not actionable under § 1983. *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

### A. Official Capacity Claims and Claims against ODRC

Plaintiff's official capacity claims for money are barred by the Eleventh Amendment. "'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' which is 'no different from a suit against the State.'" *McCoy v. Michigan*, 369 F. App'x 646, 654 (6th Cir. 2010) (quoting *Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 71(1989)).  The Eleventh Amendment of the United States Constitution operates as a bar to federal-court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000). "It is well established that § 1983 does not abrogate the Eleventh Amendment." *Harrison v. Michigan*, No. 10-2185, 2013 WL 3455488, at *3 (6th Cir. July 10, 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)).  Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999).  Thus, dismissal of Plaintiff's official capacity claims for money damages against Defendants Hudson and Mohr is appropriate. *See Stayner v. Ohio Dep't of Rehab. & Corr.*, No. 2:09-CV-752, 2010 WL 2620586, at *5 (S.D. Ohio June 25, 2010) (dismissing official capacity claims for money damages, but allowing claims for injunctive relief to continue).

Likewise, the Court also finds dismissal appropriate with respect to ODRC.  First, as discussed above, the Eleventh Amendment bars recovery of monetary damages against this Defendant.  *Mixon*, 193 F.3d at 397.  Second, Plaintiff's release from incarceration has rendered any contemplated claim for injunctive or declaratory relief moot.

Article III of the United States Constitution limits a federal court's exercise of judicial power to actual, ongoing "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1.  Article III's case-or-controversy requirement subsists throughout all stages of the litigation. *United States v. Juvenile Male*, 131 S.Ct. 2860, 2864 (2011) (internal quotation marks and citation omitted) ("It is a basic principle of Article III that a justiciable case or controversy must remain extant at all

6

stages of review, not merely at the time the complaint is filed."). The doctrine of mootness is a corollary of Article III's case-or-controversy requirement. "The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction." 15 James Wm. Moore et al, Moore's Federal Practice § 101.9, at 101–238 (3d ed. 2011).

An inmate's transfer or release ends the alleged violations of her constitutional rights, which "render[s] the court unable to grant the requested relief." *Berger*, 983 F.2d at 724; *Fredette v. Hemingway*, 65 F. A'ppx 929, 931 (6th Cir. 2003) (concluding that an inmate's request for injunctive relief to prevent his transfer to another prison became moot upon the inmate's subsequent transfer because "the district court was unable to grant the relief requested"). Accordingly, in light of Plaintiff's release from incarceration, to the extent she seeks injunctive relief, her claims against ODRC must be dismissed.

## B. Individual Capacity Claims

Plaintiff cannot establish the liability of a defendant absent a showing that the defendant was personally involved in the activities that form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *see also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x at 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"). In other words, individual liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems

7

caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991). A defendant must, therefore, play more than a passive role in the alleged violation or show mere tacit approval of the actions in question. *Rizzo*, 423 U.S. at 371. The mere existence of supervisory relationship to the actual wrongdoer is not enough to establish personal liability. *Iqbal*, 556 U.S. at 677.

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his or her] serious medical needs." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011). Where the risk of serious harm is obvious, it can be inferred that the defendants had knowledge of the risk. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received

> inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med. Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Rather, the Sixth Circuit considers the subjective component to be satisfied where defendants recklessly disregard a substantial risk to a plaintiff's health. *Parsons v. Caruso*, 491 F. App'x 597, 603 (6th Cir. 2012). Furthermore, "a difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim." *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002).

Plaintiff must satisfy both the objective and subjective components to adequately state a claim for deliberate indifference. As explained above, the objective component mandates that a plaintiff demonstrate a "sufficiently serious" medical need, "which is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (internal citations omitted).

Here, Plaintiff meets the objective component of a deliberate indifference claim. Accepting Plaintiff's allegations as true, the Court concludes that she was diagnosed with "a swollen right parotid gland and that her right salivary gland had a pleomorphic adenoma," (ECF No. 1 at 7), and that her case meets the requirements of a "sufficiently serious" medical condition. *Barnett*, 414 F. App'x at 787–88. Plaintiff's claims against Defendants in their individual capacities, nevertheless, still fail because her allegations do not satisfy the subjective

9

component of a deliberate indifference claim.

### 1. Defendant Ajibade

In order to demonstrate a deliberate indifference claim, Plaintiff must allege that Defendant Ajibade subjectively perceived a substantial risk of serious harm and disregarded that known risk in his treatment. *Blackmore*, 390 F.3d at 896. In her Complaint, Plaintiff alleges that Defendant Ajibade saw her one time, on June 18, 2015, and prescribed eye drops for use in her ear and pain medication. (ECF No. 1 at 8.) Plaintiff implies that Defendant Ajibade is liable for her decision not to prescribe antibiotics. (*Id.*)

In reviewing Plaintiff's allegations, the Court cannot conclude that Plaintiff has sufficiently alleged that Defendant Ajibade was aware that Plaintiff would be subject to a substantial risk of serious harm if she did not receive antibiotic treatment. To the extent Defendant Ajibade failed to prescribe antibiotics or correctly alter Plaintiff's diagnosis, her actions do not rise to the level of a constitutional violation. *Santiago*, 734 F.3d at 591 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)) ("'[W]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.'")

Accordingly, Plaintiff's Complaint provides insufficient factual content from which the Court could reasonably infer that Defendant Ajibade was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" or that she actually drew that inference and ignored the risk. *Blackmore*, 390 F.3d at 896 (finding that a defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists and . . . ignore[] that risk," to have a sufficiently culpable state of mind for a deliberate indifference claim). Plaintiff, therefore, fails to state a claim against Defendant Ajibade for deliberate indifference.

### 2. Defendant Burkes

Plaintiff's Complaint does not contain any factual allegation that, if proved, would show Defendant Burkes' personal involvement in the alleged misconduct. Plaintiff names Defendant Burkes only once in the body of her Complaint, and she does not indicate what unconstitutional actions she believes Defendant Burkes took other than receive Plaintiff's written grievances. (ECF No. 1 at 9.) Plaintiff never indicates how, if at all, Defendant Burkes was personally involved in any of the alleged misconduct. At most, Plaintiff's Complaint appears to imply that Defendant Burkes is liable under § 1983 because of her supervisory position. Under § 1983, however, supervisory liability is unavailable. *Rizzo*, 423 U.S. at 371. Plaintiff's pleading, therefore, does not allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged," even assuming all of her factual allegations are true. *Iqbal*, 556 U.S. at 678. Accordingly, the Court finds that Plaintiff's allegations against Defendant Burkes in her individual capacity fail to state a claim for which relief can be granted.

### 3. John/Jane Doe Defendants

In her Complaint, Plaintiff does not provide any facts from which the Court could conclude that the John/Jane Doe Defendants had personal involvement in the alleged unconstitutional conduct. Furthermore, Plaintiff alleges no more than supervisory responsibility or general negligent malpractice, neither of which, as explained above, rises to the level of a

constitutional violation. Plaintiff, therefore, fails to state a claim on which relief may be granted against Defendants John/Jane Doe 1-5.

### 4. State-law Tort Claims

In addition to her Section 1983 claims, Plaintiff also purports to bring state-law tort claims against Defendants in their individual capacities. The Court is not in a position to determine whether Defendants are immune from Plaintiff's state law tort claims. Until the Ohio Court of Claims determines that they are not immune, however, Plaintiff's claims are not cognizable. With respect to a state law tort claim, a federal court sits as a court of the forum state and is bound to apply its substantive law. *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09 (1945). The Sixth Circuit has recognized "Ohio law requires that, prior to asserting a claim against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to the immunity provided for in Ohio Revised Code § 9.86." *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989). Prior to the Court of Claims' determination, then, there is no claim under Ohio law upon which relief can be granted against Defendants in their individual capacities. The only cognizable claims, at least initially, lie against the State of Ohio in the Court of Claims. *Id.* (citing Ohio Rev. Code Ann. § 2743.02(F)). Accordingly, the Court cannot exercise jurisdiction over Plaintiff's state law tort claims until such time as a cause of action against Defendants is recognized under Ohio law.

## IV. CONCLUSION

For the reasons explained above, Plaintiff has failed to state a claim on which relief may be granted against Defendants. Accordingly, Defendants' Motion to Dismiss is **GRANTED**. (ECF No. 12.)

**IT IS SO ORDERED.**

Date: November 9, 2017                            /s/ *Elizabeth A. Preston Deavers*
                                                 ELIZABETH A. PRESTON DEAVERS
                                                 UNITED STATES MAGISTRATE JUDGE